IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**OLD WHITE CHARITIES, INC.,**

    **Plaintiff,**

    vs.

**BANKERS INSURANCE, LLC,**

    **Defendant/Third Party Plaintiff,**

    vs.

**ALL RISKS, LTD.,**

    **Third Party Defendant.**

**CASE NO. 5:17-CV-01375**

## O R D E R

On May 10, 2018 came the parties, by counsel, all for a hearing on Plaintiff Old White Charities, Inc.'s (hereinafter "Old White") ***Motion to Compel*** (ECF No. 64) and ***Motion for Leave to Depose Melvin E. Tull***. (ECF No. 109) Appearing for Old White were Michael Levine, Esq. and David Nelson, Esq., for Defendant Bankers Insurance, LLC (hereinafter "Bankers") were Joshua Johnson, Esq. and Fazal Shere, Esq., and for Third Party Defendant All Risks, Ltd. by telephone, Jeffrey Van Volkenburg, Esq. After hearing the arguments of counsel, the pleadings filed in support of same, and having reviewed the pertinent legal authorities, the Court **GRANTS** Plaintiff's ***Motion to Compel*** and ***Motion for Leave to Depose Melvin E. Tull*** for the reasons explained, *infra*:

**Preliminary Matters**

The undersigned held an informal in chambers conference concerning Plaintiff's Motion to Compel on April 26, 2018. (ECF No. 101) Afterwards, the parties were able to resolve many of the issues raised in the ***Motion to Compel***, however, in compliance with this Court's Order (ECF No. 102), the parties advised the undersigned that four of Plaintiff's Requests for Admissions to Banker could not be resolved outside of Court, necessitating the hearing for these remaining discovery disputes.

On May 8, 2018, Plaintiff filed its ***Motion for Leave to Depose Melvin E. Tull***. (ECF No. 109) While mindful that Bankers has had insufficient opportunity to file a formal response to this ***Motion*** before the hearing on May 10, 2018, the undersigned found that the arguments and Exhibits attached to Plaintiff's ***Motion*** caused the undersigned grave concern for the candor owed to this Court, and implicates the discovery disputes raised herein.

**Relevant Law**

Rule 36(a)(4) of the Federal Rules of Civil Procedure provides:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Rule 37(a)(3)(B) allows a requesting party to seek an order compelling appropriate responses when a party fails to provide an answer to interrogatories or requests for production. A response is inadequate under these Rules when a party generally objects to discovery without more; the party must show why the discovery request is improper. White v. Sam's E., Inc., No. 5:14-cv-26106, 2016 WL 205494, at *1 (S.D. W. Va. Jan. 15, 2016). Answers, responses, or

document productions that are "evasive or incomplete" are treated as failures to answer or respond to discovery requests. See Fed. R. Civ. P. 37(a)(4). Finally, Rule 37 also provides:

> If the motion to compel is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving the parties an opportunity to be heard, require the party whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees.

Rule 37(c)(2) of the Federal Rules of Civil Procedure provides:

> If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
>
> (A)  the request was held objectionable under Rule 36(a);
> (B)  the admission sought was of no substantial importance;
> (C)  the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
> (D)  there was other good reason for the failure to admit.

### Old White's Argument Supporting Motion to Compel

As stated *supra*, the undersigned conducted an informal conference with the parties to review the issues concerning Bankers' responses to Old White's discovery requests. The parties were able to resolve many of these disputes after the conference, however, Old White notified the Court that despite having revised some of its responses, Old White contended that Bankers still failed to provide proper responses to four remaining Requests for Admissions:

> **REQUEST 9.** Admit that Bankers knew, at the time it submitted the Application, that Old White was relying on Bankers to procure coverage that would apply if someone won the Hole in One Competition.
>
> **INITIAL RESPONSE:** Bankers admits that it knew Old White was requesting a policy consistent with the terms of the Application and the Addendum.
>
> **REVISED RESPONSE:** Bankers admits that Old White was relying on Bankers' assistance to procure coverage consistent with the terms of the Application and the Addendum, but denies the rest of this Request because it improperly asks Bankers

3

> to delve into Old White's subjective reliance and thought process, and it assumes that Old White requested coverage without conditions.

Old White argues that under the aforementioned Rules, this is a defective answer: First, the Revised Response continues to evade the substance of the Request, which concerns Bankers' knowledge at a particular point in time – when it submitted the Application. Bankers' Revised Response says nothing about its own knowledge, nor is it clear from the Revised Response whether the Response is speaking to the time period specified in the Request, or some other point in time. Third, the Revised Response fails to admit or deny the facts stated and, instead, couches the admission in facts that are not part of the Request. For example, nowhere in Old White's Request is there any reference to the Application or its terms. Old White contends that during the conference, this Court pointed out and directed that if Bankers cannot admit the facts, as stated in the Request, then it should deny the Request, but it cannot change the Request to a statement that serves Bankers' interests. Old White asserts that is exactly the case with Request 9.

Next, Old White states that Bankers' response to Request 10 also fails to comply with the Rules:

> **REQUEST 10.** Admit that Bankers knew, at the time it procured the Policy, that Old White was relying on Bankers to procure coverage that applied if someone won the Hole in One Competition.
>
> **INITIAL RESPONSE:** Bankers admits that it knew Old White was requesting a policy consistent with the terms of the Application and the Addendum.
>
> **REVISED RESPONSE:** Bankers admits that Old White was relying on Bankers' assistance to procure coverage consistent with the terms of the Application and the Addendum, but denies the rest of this Request because it improperly asks Bankers to delve into Old White's subjective reliance and thought process, and it assumes that Old White requested coverage without conditions.

Again, Old White argues that this is a defective answer for the same reasons argued regarding Bankers' response to Request 9.

With regard to Request 34, Old White asserts Bankers' answer is also inadequate pursuant to the Rules:

> **REQUEST 34.** Admit that Bankers notified Old White on June 29, 2015 that the coverage Old White had requested for the Hole in One Competition had been bound.
>
> **INITIAL RESPONSE:** Bankers denies this Request to the extent that it states or infers that Old White requested a policy without a yardage limitation. Bankers admits that it notified Old White on June 29, 2015 that coverage consistent with the Application and the Addendum to the Application had been bound. Bankers denies any other matter that is not specifically admitted.
>
> **REVISED RESPONSE:** Bankers denies this Request to the extent that it states or infers that Old White requested a policy without a yardage limitation with its inclusion of "the coverage Old White had requested for the Hole in One Competition." Bankers admits that it notified Old White on June 29, 2015 that coverage had been bound. Bankers denies any other matter that is not specifically admitted.

Old White contends that Bankers' Revised Response improperly denies facts that are not contained within the Request. To the extent Bankers believes that the Request suggests or infers certain facts, Old White insists that the proper procedure is for Bankers to state an objection to that effect and then respond to the Request subject to the stated objection. It is improper, however, for Bankers to couch its objection in the form of a denial by denying facts that are not stated in the Request. Old White asserts that that denial, therefore, should be withdrawn.

With respect to Request 41, Old White again contends that Bankers' answer is defective:

> **REQUEST 41.** Admit that Bankers did not determine whether the binder was consistent with the coverage that Old White had directed Bankers to procure.
>
> **INITIAL RESPONSE:** Bankers denies this Request to the extent that it states or infers that Old White requested a policy without a yardage limitation. Bankers admits that All Risks forwarded the binder to Bankers on the day before the 2015 Greenbrier Classic, June 30, 2015, at 3:14 p.m., and that Bankers did not determine whether the binder was consistent with the Application and the Addendum prior to the 2015 Greenbrier Classic.

> **REVISED RESPONSE:** Bankers denies this Request to the extent that it states or infers that Old White requested a policy without a yardage limitation with its inclusion of "the coverage that Old White had directed Bankers to procure." Bankers admits that it did not determine whether the binder was consistent with the Application and the Addendum prior to the 2015 Greenbrier Classic.

Old White argues that Bankers' Revised Response suffers from the same defects in Bankers' Revised Response 34 discussed *supra*.

In its response (ECF No. 98), Bankers argued that its Responses are not evasive, and consist of good faith explanations for its answers. During the hearing, Bankers argued that the aforementioned answers comply with the Rules and do respond to the substance of Old White's Requests. Additionally, Bankers asserted that Old White's Requests assume facts that Bankers cannot admit and therefore qualified their answers appropriately. In response to further questioning from the bench, counsel for Bankers represented that Bankers finally admits to Requests 34 and 41, however, Bankers remained steadfast in its argument that responses to Requests 9 and 10 were appropriate under the Rules as proper qualifications for its answers. Bankers explained that Old White's Requests 9 and 10 presume certain terms in the insurance coverage for the Hole in One Competition that were not discussed between the parties.

Further, Bankers contends that Old White's ***Motion to Compel*** Bankers responses to Requests 9 and 10 bears a striking resemblance to the situation explored in Tri-State Hosp. Supply Corp. v. U.S., 226 F.R.D. 118 (D.C. Feb. 28, 2005). In that case, the plaintiff moved for judicial determination if the government's responses to two requests for admission were sufficient and objections justifiable. Id. at 137-138. The requests and responses at issue were the following: "Tri-State made payment to its Pakistani suppliers of surgical instruments in the amount specified on invoices accompanying the merchandise" to which the government admitted and included the qualifying statement: "payments that Tri-State made to its Pakistani suppliers did not reflect the

6

negotiated price paid by Tri-State for the surgical instruments." Id. at 137. The plaintiff, Tri-State, argued that the government's additional non-responsive qualification violated Rule 36(a). Id.

The next request and response at issue was: "During execution of a search warrant at Tri-State on March 28, 1994, Tri-State personnel showed Customs agents financial records reflecting that Tri-State made payments in the amount of the higher invoice price." Id. at 138. The government responded: "Admit that during execution of a search warrant at Tri-State on March 28, 1994, Tri-State personnel showed Customs agents financial records reflecting that Tri-State made payments in *an amount higher than the negotiated price for the surgical instruments, and that those higher payments were reflected on the invoices that accompanied the merchandise and deny the remainder of this request for admissions*." Id. (*italics* in original) Again, Tri-State argued that the italicized portion of the response was unresponsive and violated Rule 36(a). Id.

Ultimately, the court found that the government's responses to requests for admissions were adequate because the term "payment" was a key legal issue in the underlying case and the government was permitted to answer the way it did as a means of explaining its position. Id. Similarly, Bankers contends that it will not be "bullied into an admission it does not want to make." Id.

Old White argued that this case is not a contract case, where terms of the insurance coverage for the Hole in One Competition are at issue, but is a negligence case, which concerns Bankers' alleged negligence in procuring insurance coverage on Old White's behalf. Therefore, the responses offered by Bankers violate Rule 36(a).

After a lengthy colloquy with the Court, Bankers announced to the Court that it will again revise its responses to Requests 9 and 10.

## Discussion

The undersigned finds Bankers' responses to Requests 9 and 10 fail to meet the standard of being sufficient answers to Old White's Requests pursuant to Rule 36(a). Bankers' responses are unresponsive to the substance of the matter requested; Bankers' responses do not admit or deny the substance of the matter, but instead, proffers factual allegations that suit its own interests. Indeed, Bankers' denials to the extent that the Requests "improperly asks Bankers to delve into Old White's subjective reliance and thought process" is wholly inadequate under the Rules and totally fails the requirement that an answer be based on good faith. Accordingly, the undersigned **GRANTS** Old White's ***Motion*** regarding Requests 9 and 10, and **ORDERS** that Bankers amend its responses to Requests 9 and 10 in conformity with the Rule. Further, the undersigned **GRANTS AS MOOT** Old White's ***Motion*** with regard to Requests 34 and 41, to which Bankers **ADMITTED** as announced during the hearing.

## Relevant Law

Pursuant to Rule 501 of the Federal Rules of Evidence, in civil proceedings state law governs privilege regarding a claim or defense for which state law supplies the rule of decision. Therefore, West Virginia law applies in determining the scope of the attorney-client privilege; communications are protected under this privilege only when:

> (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be intended to be confidential.

See, State v. Burton, 163 W. Va. 40, 254 S.E.2d 129 (W. Va. 1979).

The Fourth Circuit has adopted the "classic test" for determining the existence of attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to

> become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982) (quoting United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358–59 (D.Mass.1950)). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability."[1] Jones, 696 F.2d at 1072.

The work product doctrine is governed under Rule 26(b)(3) of the Federal Rules of Civil Procedure. This Rule does not protect documents from discovery unless they are prepared in anticipation of litigation or reveal the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

In State ex rel. USF & G v. Canady, 194 W.Va. 431, 460 S.E.2d 677, 684–85 (1995), the Supreme Court of Appeals of West Virginia noted that "[a]s the attorney-client privilege and the work product exception may result in the exclusion of evidence which is otherwise relevant and material and are antagonistic to the notion of the fullest disclosure of the facts, courts are obligated to strictly limit the privilege and exception to the purpose for which they exist." Id. at 684. However, "[c]ourts must work to apply the privilege in ways that are predictable and certain" keeping in mind that "[t]he privilege forbidding the discovery of evidence relating to communications between an attorney and a client is intended to ensure that a client remains free from apprehension that consultations with a legal advisor will be disclosed." Id. at 684 (citations omitted).

---

[1] See also, State ex rel. USF & G v. Canady, 194 W. Va. 431, 460 S.E.2d 677, 684 (1995) (the claimant bears the burden of establishing the applicability of the attorney-client privilege or the work product exception).

To determine whether a document was prepared in anticipation of litigation, "the primary motivating purpose behind the creation of the document must have been to assist in pending or probable future litigation." State ex rel. United Hospital Center, Inc. v. Bedell, 199 W.Va. 316, 484 S.E.2d 199, 213 (1997). Consistent with the findings of the United States Court of Appeals for the Fourth Circuit in In re Grand Jury Proceedings, 33 F.3d 342, 348 (4th Cir. 1994), USF & G held that the work product protection is analyzed in two contexts: fact work product and opinion work product:

> Both are generally protected and can be discovered only in limited circumstances. Fact work product can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship .... Opinion work product is even more scrupulously protected as it represents the actual thoughts and impressions of the attorney, and the protection can be claimed by the client or the attorney.

USF & G, 460 S.E.2d at 691 (quoting In re Grand Jury Proceedings, 33 F.3d at 348).

In State ex rel. Allstate Ins. Co. v. Gaughan, 203 W.Va. 358, 508 S.E.2d 75, 92 (W.Va. 1998), the West Virginia Supreme Court of Appeals provided guidance in analyzing work product issues, and determined that a case-by-case approach is

> more sound in determining whether documents in an insurance claim file were prepared in anticipation of litigation. The trial court should consider the nature of the requested documents, the reason the documents were prepared, the relationship between the preparer of the document and the party seeking its protection from discovery, the relationship between the litigating parties, and any other facts relevant to the issue.

(quoting Askew v. Hardman, 918 P.2d 469, 473–74 (Utah 1996)).

**Old White's Argument for Deposing Melvin E. Tull**

Shortly before the hearing on its ***Motion to Compel***, Old White filed for leave to depose Melvin E. Tull, who is general counsel for Bankers. (ECF No. 109) Old White argues that in Talbot 2002 Underwriting Capital Ltd., *et al*. v. Old White Charities, Inc., *et al*., No. 5:15-cv-12542

(S.D.W. Va. originally filed Aug. 19, 2015), provides important background information to this instant matter, specifically, deposition testimony given by Bankers representatives in the Talbot case. (ECF No. 110 at 1-2) In short, Old White asserts that two Bankers representatives, Marshall Fleming and Gene Hayes, testified during their depositions on May 4, 2018 and May 2, 2018, respectively, that they gave false testimony in the Talbot case as to the coverage sought on Old White's behalf for the Hole in One competition.[2] (Id. at 2) Old White directs the Court's attention to the letter dated July 21, 2015 written by Melvin Tull to Old White's insurer HCC that Old White would not have accepted a distance limitation in its insurance for the Hole in One competition, and that Bankers would not have allowed such a limitation. (Id. at 2-3; ECF No. 109-5) It is this critical issue on which Messrs. Fleming and Hayes have recently changed their testimonies. (ECF No. 110 at 3)

Old White argues that these recent developments illustrate good cause for a limited extension of the deadline to complete depositions in this case. (Id.) Old White cannot determine if Messrs. Fleming and Hayes were untruthful in Talbot or here, or *vice versa*, and believes that Melvin Tull can shed light on the apparent incongruence or falsehood. (Id. at 6) Old White argues that Melvin Tull was acting as an advocate on behalf of Old White in the Talbot case and clearly stated that there was no distance limitation considered by Old White in obtaining insurance coverage. (Id.) Because Melvin Tull was not acting in his capacity as general counsel for Bankers at that time, there is no attorney-client privilege here – in fact, he was acting on behalf of Old White to secure payment of insurance proceeds. (Id. at 7-8) Melvin Tull's deposition is sought to see what facts he relied upon when he wrote that July 21, 2015 letter, nothing more, and facts are

---

[2] Mr. Fleming recently testified that he did not provide truthful testimony in Talbot (ECF No. 109-1); Mr. Hayes recently testified that his testimony in Talbot was "an incongruity" with his more recent testimony and that he could not answer as to why his testimony changed in the last two years (ECF No. 109-4). (ECF No. 4-5)

11

not privileged. (Id. at 8) Finally, Old White asserts that an extension of the deposition deadline to allow for Melvin Tull's deposition will not alter the Scheduling Order in any meaningful way. (Id.)

During the hearing, Bankers argued that Old White should not be permitted to depose Melvin Tull because he is Bankers' general counsel, and there is no way this would not violate the attorney-client privilege. Melvin Tull, in his capacity as general counsel, obtained the facts from his client, Bankers, in order to write that letter, which speaks for itself. Bankers contends that Old White seeks communications, which are always privileged, and therefore, this Court should not grant the ***Motion***.

## Discussion

While the undersigned notes that Bankers did not have time to file a formal response to Old White's ***Motion***, the fact that Bankers identified at least two of its representatives as Rule 26(a)(1)(A)(i) witnesses, Messrs. Fleming and Hayes, in the instant case (ECF No. 109-2 at 3), both of whom gave completely inconsistent and potentially false testimony in this case, is compelling circumstances and provides good cause for Old White's ***Motion***. Bankers also identified in this case as additional Rule 26(a)(1)(A)(i) witnesses: "[a]ny individual identified by any party in Talbot 2002 Underwriting Capital, Ltd., *et al*. v. Old White Charities, Inc., *et al.*, No. 5:15-cv-12542", which includes Melvin Tull. (ECF No. 109-2 at 4; ECF No. 109-3 at 3) As stated before, these consist of compelling circumstances supporting Old White's ***Motion***.

Although at first blush, Old White's reasons for deposing Melvin Tull do not seem to trigger attorney-client privilege or work product doctrine privilege, the undersigned recognizes that Bankers can submit an appropriate privilege log and/or assert the appropriate privilege in response to any questions posed by Old White to Melvin Tull. Nevertheless, the undersigned cautions counsel for Bankers to tread carefully here, given the marked inconsistencies in the sworn

12

testimonies provided by at least two of its own fact witnesses. Accordingly, Old White's ***Motion for Leave to Depose Melvin E. Tull*** is **GRANTED**. Bankers' objection to same is noted.

## Ancillary Matters

During the hearing, the undersigned heard two polar opposite assertions by the parties: Old White asserted that Bankers' expert testified that insurance policies exist that do not include a yardage or distance limitation, whereas Bankers asserted that its expert testified that no such insurance policies exist.

It is clear to the Court that both positions cannot be true. Either Bankers' expert testified that a policy without yardage limitations does exist or testified that a policy without yardage limitations does not exist. It is hard for the undersigned to imagine how both attorneys arguing the position could both be right. The undersigned is very concerned that an officer of the Court may have misrepresented a statement of fact. Misrepresentations of fact by Counsel will not, and cannot, be tolerated.[3] The undersigned believes it is important to determine if, in fact, Counsel for one of the parties made a misrepresentation of fact to the Court. The undersigned therefore **ORDERS** that Counsel for the parties have ***until the close of business on May 21, 2018*** to submit information that they rely upon to assert that one of Banker's experts testified that a policy without yardage limitations does exist (as asserted by Counsel for Old White) or does not exist (as asserted by Counsel for Bankers) as represented to this Court during the hearing on May 10, 2018. Upon receiving the same, the Court will determine if a further hearing is necessary, and will give Counsel an opportunity to argue if sanctions would be appropriate should the Court find that a misrepresentation was in fact made by one of the Counsel for the parties.

---

[3] The Court is very troubled by the apparent, well-grounded, representations that two representative for Bankers have admitted to having given false testimony in a companion case as noted, *supra*. With that knowledge in mind and finding it difficult for both representations to co-exist, the Court believes that the interest of justice demands that further inquiry be made by the Court to determine if either Counsel has attempted to mislead the Court.

As an additional matter, counsel for Old White advised the Court that they have been waiting for Bankers to respond to Old White's request to produce notes that were composed during the Hole in One negotiations. Old White had no knowledge of these notes until depositions were taken on or about April 27, 2018, and points out that as of May 10, 2018, Bankers has not been able to respond to this request, that is to confirm or deny the existence of these notes or whether they existed at one time and were destroyed. Bankers represented to the Court and to counsel for Old White that it will provide a full response to this inquiry by Monday, May 14, 2018. Accordingly, the undersigned **ORDERS** that Bankers fully respond to Old White's request by end of business (5:00 p.m.) on May 14, 2018.

Pursuant to Rule 37, Old White is invited to file the appropriate motion for sanctions outlining the reasons why sanction are appropriate in this matter and including the time it took to prosecute the ***Motion to Compel***. Bankers shall be permitted to file an appropriate pleading setting forth why this Court should not issue sanctions and any other objections to the accounting of time filed by Old White.

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the ruling set forth above on this non-dispositive motion may be contested by filing, within 14 days, objections to this Order with District Judge Irene Berger. If objections are filed, the District Court will consider the objections and modify or set aside any portion of the Order found clearly to be erroneous or contrary to law.

The Clerk is requested to send a copy of this Order to all counsel of record.

**ENTER: May 14, 2018**.

_____
Omar J. Aboulhosn
United States Magistrate Judge