**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

OLD WHITE CHARITIES, INC.,

      Plaintiff,

v.              CIVIL ACTION NO.   5:17-cv-01375

BANKERS INSURANCE, LLC,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

   The Court has reviewed the *Defendant Bankers Insurance, LLC's Motion for Summary Judgment* (Document 21) and *Memorandum of Law in Support* (Document 22), the *Response of Old White Charities, Inc. in Opposition* (Document 28), and the Defendant's *Reply* (Document 30).   The Court has also reviewed the *Plaintiff Old White Charities' Motion for Partial Summary Judgment on Liability* (Document 43) and *Memorandum in Support* (Document 44), *Bankers Insurance, LLC'S Response* (Document 50), and the *Plaintiff's Reply* (Document 53), as well as the *Plaintiff's Emergency Motion for Leave to File Supplemental Memorandum Supporting its Position on Pending Motions for Summary Judgment* (Document 120) and *Memorandum in Support* (Document 121), the Defendant's *Response* (Document 155), and the Plaintiff's *Reply* (Document 158), the *Complaint* (Document 1), and all attached exhibits.   Finally, the Court has reviewed the *Third Party-Defendant All Risks, LTD.'s Motion to Dismiss Third-Party Complaint of Bankers Insurance, LLC* (Document 19) and *Memorandum of Law in Support* (Document 20), the *Defendant Bankers Insurance, LLC's Response* (Document 25), and the *Third-Party Defendant*

1

*All Risks, LTD's Reply* (Document 27).   For the reasons stated herein, the Court finds that the Defendant's motion for summary judgment should be granted, the Plaintiff's motion for partial summary judgment and motion to supplement the briefings should be denied, and the Third-Party Defendant's motion to dismiss should be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff, Old White Charities, Inc. ("Old White") initiated this lawsuit with a complaint in this Court in February 2017.   Old White's complaint arises out of the same factual scenario before this Court in *Talbot 2002 Underwriting Capital LTD, et al., v. Old White Charities, Inc.*, Civil Action Number 5:15-cv-12542, wherein this Court entered a *Memorandum Opinion and Order* (Document 246) granting summary judgment on behalf of the plaintiffs and third-party defendants and against Old White.   The Court adopts the statement of facts and procedural history set forth in that opinion, but provides the following concise summary for the purpose of addressing these pending motions.

Old White is a non-profit corporation affiliated with the Greenbrier Resort ("The Greenbrier") in White Sulphur Springs, West Virginia.   The Greenbrier hosts an annual PGA Tour golf tournament known as the Greenbrier Classic.   During the 2015 Greenbrier Classic, which took place from July 1, 2015 to July 5, 2015, the resort offered a promotion called the Hole-In-One Fan Jackpot, wherein the Greenbrier promised to pay fans seated in the grandstands around the eighteenth hole $100 for the first hole-in-one, $500 for the second hole-in-one and $1,000 for the third.   Old White enlisted the Defendant/Third-Party Plaintiff here, Bankers Insurance, LLC ("Bankers"), to work as its agent and procure an insurance policy covering the hole-in-one

2

promotion.   Bankers then enlisted the help of Third-Party Defendant All Risks, LTD. ("All Risks") to obtain the policy for Old White.

Old White eventually entered into an insurance policy through which the insurers agreed to pay Old White $150,000 for the first hole-in-one made by any golfer, $750,000 for the second, and $1,400,000 for the third, for a total insurance value of $2,300,000.   Importantly, the application for the insurance policy, filled out by employees of both Old White and Bankers, contained a warranty that required the hole in question to play a minimum of 150 yards.   Old White employee Monte Ortel, who at the time was the executive director for the Greenbrier Classic, reviewed the insurance application and sent it to another Old White employee, Charles Henthorn.   In sending the policy application, Mr. Ortel informed Mr. Henthorn that the application required some revisions.   (Bankers' Mem. of Law in Supp., Ex. D.)   While edits were made to the application between Mr. Ortel and Mr. Henthorn, at no point was the 150-yard minimum warranty crossed out or edited in any way.   (*Id.*, Ex. E.)   In working with Bankers to fill out and execute the policy application, Old White's employee Charles Henthorn testified that he knew the application contained a 150-yard minimum when he read and signed it on behalf of Old White.   (Bankers' Mem. of Law in Supp., Ex. G)(Henthorn Dep., 38:21-40:5.)

The final policy binder contained an exclusion requiring that the hole in question be at least 170 yards from the tee.   During the tournament, two golfers hit holes-in-one at the eighteenth hole, and Old White paid the fans seated in the grandstands around the hole approximately $200,000 in cash.   It is undisputed, and this Court has previously found, that both of the holes-in-one were hit from a distance of only 137 yards.

Following Old White's demand for insurance coverage on the payouts made during the hole-in-one promotion, the insurance underwriters brought suit in *Talbot*.   The plaintiffs in *Talbot* sought a declaration that Old White was not entitled to coverage under the policy on the grounds that the hole in question only played 137 yards from the tee in violation of the insurance policy. Bankers, as the agent that assisted Old White in procuring the policy, moved to intervene in *Talbot*, and the Court granted that motion.   Shortly thereafter, Bankers filed a third-party complaint against All Risks, LTD ("All Risks").   Bankers had requested All Risks to serve as its intermediary in acquiring the insurance policy for Old White, and alleged in its cross-claim that All Risks, among other wrongs, negligently failed to inform Bankers and Old White that the final policy included a minimum yardage requirement for the hole.   Amidst its other claims, however, Bankers did not put forth claims for indemnification or contribution against All Risks.   Pursuant to its *Memorandum Opinion and Order* (Document 116 in Civil Action No. 5:15-cv-12542), the Court dismissed Bankers' cross claim against All Risks, finding that Bankers had failed to plead an adequate contractual relationship or any other special relationship between it and All Risks. (*Id.* at 12-17.)

The Court eventually granted summary judgment against Old White and in favor of the Plaintiffs in *Talbot*.   (Document 246 in 5:15-cv-12542.)   The Court found that Old White was not entitled to coverage under the insurance policy because the terms of the policy were unambiguous.   The Court found that both Old White and Bankers knew the policy application contained a minimum yardage requirement, and that the hole did not satisfy that minimum yardage requirement when golfers made the holes-in-one.   The Court entered judgment against Old White on January 10, 2017, and on February 6, 2017, Old White filed its notice of appeal to the Fourth

4

Circuit.   The Fourth Circuit issued an opinion on December 20, 2017, affirming the Court's order granting summary judgment against Old White.   The Fourth Circuit specifically ruled that Old White was not entitled to coverage under the policy "even if the terms of the application are interpreted to supersede those of the final policies, as Old White also did not satisfy the application's unambiguous 150-yard minimum term."   (Document 257 in Civil Action No. 5:15-cv-12542, at 5.)

While that appeal was pending, Old White initiated this action against Bankers, including three counts.   In Count I, Old White alleges that Bankers was negligent in that it improperly completed the insurance application, failed to inform Old White of the terms of coverage negotiations, failed to review the final policy binder, and ultimately failed to secure the type of coverage that Old White instructed it to secure.   (Compl., at ¶¶ 31-32.)   In Count II, Old White alleges that Bankers' actions during the process of obtaining coverage entitle Old White to a reasonable expectation of coverage.   (*Id.* at ¶¶ 33-36.)   Finally, in Count III, Old White claims that Bankers made material misrepresentations and is therefore liable to Old White for Old White's lack of coverage under the policy.   (*Id.* at ¶¶ 37-43.)   Bankers subsequently filed its *Third-Party Complaint* (Document 14) against All Risks on August 7, 2017, wherein it alleged that it is entitled to indemnification and contribution from All Risks should Old White's claims against Bankers be permitted to proceed.   (Third-Party Compl., at ¶¶ 14-15.)

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P.

56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).   A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169.   However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.   "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar.

31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the same standard of review. *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) *aff'd*, 474 F. App'x 101 (4th Cir. 2012). Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the non-moving party as to each motion. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

## DISCUSSION

Both Old White and Bankers move for summary judgment, and Third-Party Defendant All Risks moves to dismiss Bankers' third-party complaint. Initially, the Court will address the motions for summary judgment and Old White's motion to supplement its briefs. Lastly, the Court will address the pending motion to dismiss.

### A. *Cross Motions for Summary Judgment*

Old White argues that it is entitled to partial summary judgment on the issue of liability. The Plaintiff asserts that it has presented sufficient evidence to show that no dispute of material fact exists regarding Bankers' negligence in securing the insurance policy for Old White. Old White argues that it hired Bankers as its agent in procuring the insurance, and as its agent, Bankers owed it a duty to procure insurance that did not have a minimum yardage requirement, to provide it with sound advice, to appropriately review documents, to accurately represent the terms of the coverage for the policy that was secured, to timely forward Old White's premium payment to the underwriters, and to warn Old White if it did not have the appropriate coverage for the hole-in-one competition. Old White asserts that there is no genuine issue of material fact regarding Bankers' breach of these duties, and that it is therefore entitled to judgment as a matter of law regarding Bankers' liability for its insurance losses.

In both its response to Old White's motion for partial summary judgment and its own summary judgment motion, Bankers counters that there is no genuine issue of material fact regarding its lack of liability, and that it is entitled to summary judgment on all of Old White's counts. Bankers first argues that Old White's complaint is barred by *res judicata* and collateral estoppel, because all of the claims and issues set forth by Old White were previously litigated on the merits in *Talbot*. Because the summary judgment opinion in *Talbot* was a final ruling on the merits, and because Old White had the opportunity to bring these claims against Bankers during that proceeding, Bankers argues that the pending counts are barred under one or both of these preclusion theories, and summary judgment in its favor is appropriate. Bankers further argues that, even if *res judicata* and collateral estoppel do not bar Old White's claims, Bankers is still

entitled to summary judgment because Old White has put forth no evidence to show a genuine issue of material fact regarding any of its three counts.

Old White asserts that neither *res judicata* nor collateral estoppel apply, because it did not have the opportunity to litigate the current claims in *Talbot*.   According to Old White, the issues in *Talbot* concerned whether Old White was entitled to coverage under the policy, not whether Bankers was negligent in its duty to procure Old White insurance.   Old White further contends that it was not given the opportunity to bring its claims against Bankers, because the Court entered summary judgment against Old White and dismissed the action before Old White's claims were considered.

At the outset, the Court finds that neither *res judicata* nor collateral estoppel bar Old White's claims.   The doctrine of *res judicata*, also known as claim preclusion, generally refers to the legal principle that "preclude[s] re-litigation of the same cause of action."   *Blake v. Charleston Area Med. Ctr., Inc.*, 498 S.E.2d 41, 48 (W.Va. 1997) (citing *Christian v. Sizemore*, 407 S.E.2d 668, 676 (W.Va. 1996)).   Accordingly, "under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action."   *Blake*, 498 S.E.2d at 48 (internal citations omitted).   According to the Fourth Circuit, "the essential elements of the doctrine [of *res judicata*] are generally stated to be (1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits."   *Keith v. Aldridge*, 900 F.2d 736, 739 (4th Cir. 1990).   Importantly, *res judicata* applies to "all of the claims actually presented in the prior action as well as all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in

9

the prior proceeding." *Skibbe v. Accredited Home Lenders, Inc.*, No. 2:08-CV-01393, 2014 WL 2117088, at *3 (S.D.W. Va. May 21, 2014) (Goodwin, J.).

Here, there was a final judgment on the merits in *Talbot*, and the facts giving rise to the cause of action are the same.   However, in *Talbot*, Old White and Bankers were co-defendants, meaning Old White's claims against Bankers would have been in the form of a cross claim. According to the West Virginia Supreme Court, "a crossclaim is actually permissive and is not barred by *res judicata*, waiver, or estoppel from being asserted in a later action, as it would be if the claim were a compulsory counterclaim under Rule 13(a)."   *State ex rel. Small v. Clawges*, 745 S.E.2d 192, 204 n. 19 (W.Va. 2013).   Because the Court dismissed the action before Old White had the opportunity to bring its cross claims against Bankers, and because those cross claims were not compulsory, Old White did not have the opportunity to bring those claims against Bankers in *Talbot* and they are not barred by *res judicata*.

Similarly, Old White's claims against Bankers are not barred by collateral estoppel. "Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit."   Syl. Pt. 2, *Conley v. Spillers*, 301 S.E.2d 216 (W.Va. 1983).   Four elements must be satisfied for a claim to be barred by collateral estoppel:

> (1) the issue previously decided is identical to the one presented in the action in question; (2) there is final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Syl. Pt. 9, *W. Virginia Dep't of Transportation v. Veach*, 799 S.E.2d 78 (W.Va. 2017) (quoting *State v. Miller*, 459 S.E.2d 114, 120 (W.Va. 1995).   "With respect to the analysis of the first Miller condition . . . we have held that it involves not only a determination of whether the facts are similar,

10

but also a determination of whether the legal standards and procedures used to assess the facts are similar."   *Veach*, 799 S.E.2d at 88.

The issues presented by Old White in this action are not identical to those issues litigated in *Talbot*.   Here, Old White claims that Bankers, its insurance agent, was negligent in procuring Old White's requested insurance policy.   The issues raised by the plaintiffs in *Talbot*, however, concerned whether Old White was entitled to coverage under the issued insurance policy. Further, as previously stated, Old White has not had a full and fair opportunity to litigate its claims against Bankers, because the action in *Talbot* was dismissed before Old White's cross claims were brought.   Therefore, the Court finds that Old White's claims are not barred by collateral estoppel, and the Court will consider the merits of Bankers' summary judgment motion as to each count in the complaint.

### 1.   Old White's Negligence Claim

Bankers next asserts that there is no genuine issue of material fact regarding Old White's negligence claim in Count I, because Old White knew the application for insurance contained a 150-yard minimum when it read and executed the application.   Because Old White knew of the provision in the application, Bankers argues it was not negligent in procuring an insurance policy that included this minimum yardage requirement.   Old White counters that Bankers indeed had a duty to procure an insurance policy without a minimum yardage requirement because that is what Old White specifically requested, and Bankers breached this duty.   Old White further contends that its claim in Count 1 "can also be read broadly to include general notions of negligence and duty."   (Pl.'s Resp. in Opp. At 9.)   Old White contends that Bankers, as its insurance agent, owed Old White the duty to act loyally for Old White's benefit, to act with care, competence, and

11

diligence, and to provide Old White with material facts.  Old White argues that it has shown Bankers knew it wanted an insurance policy without a minimum yardage requirement, and by failing to procure such a policy and failing to inform Old White that its policy in fact had a minimum yardage requirement at the time of the tournament, Bankers breached these duties.

"In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff.   No action for negligence will lie without a duty broken."   Syl. Pt. 3, *Aikens v. Debow*, 541 S.E.2d 576, 578 (W. Va. 2000) (internal quotation marks and citations omitted).   The West Virginia Supreme Court has held:

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised.   The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

*Strahin v. Cleavenger*, 603 S.E.2d 197, 201 (W. Va. 2004).   Further, a plaintiff in a negligence action must "prove by a preponderance of the evidence that . . . by breaching that duty the defendant proximately caused the injuries of the plaintiff."   *Cline v. 7-Eleven, Inc.*, 2012 WL 5471761 (N.D.W. Va. Nov. 9, 2012) (citing *Neely v. Belk, Inc.,* 668 S.E.2d 189, 197 (W.Va.2008)).

Here, the evidence is undisputed, and this Court previously found in *Talbot*, that Old White's employee Charles Henthorn knew that the application for an insurance policy covering the hole-in-one promotion included a 150-yard minimum yardage requirement.   That application language was unambiguous, and was not marked through or changed by Old White when Mr. Henthorn signed the final application.   Thus, as this Court found in *Talbot* and as the Fourth Circuit affirmed, regardless of what the final policy binder provided, Old White knew the

unambiguous language of the policy application included a 150-yard minimum yardage requirement.   Given this knowledge of the 150-yard requirement in the policy application, Bankers owed Old White no duty to secure an insurance policy outside the bounds of that application language.   Moreover, even if such a duty did exist under West Virginia law and Bankers breached said duty, Old White has presented no evidence that this breach was the proximate cause of its injuries.   It is undisputed that Old White knew what it was applying for when it signed the application, and further undisputed that the hole played less than the known 150-yard requirement.   Thus, Old White has failed to produce any evidence sufficient to create a genuine issue of material fact that Bankers proximately caused its injuries by breaching a duty. While Old White argues that Bankers misrepresented the coverage bound to Old White because the final binder included a 170-yard minimum, this argument is without merit given Old White's own knowledge of the 150-yard minimum requirement in the policy application and the Fourth Circuit's holding that "the application's addendum does not contradict the 150-yard minimum term."   (Document 257 in Civil Action No. 5:15-cv-12542, at 5.)   Summary judgment in Bankers' favor is appropriate.

### 2.  *Breach of Contract/Reasonable Expectation of Coverage*

Bankers further asserts that it is entitled to summary judgment on Count II of the complaint. Bankers argues that the claim for reasonable expectation of coverage should fail as a matter of law because Bankers was Old White's agent, not the insurance company's agent, and because there is no evidence of any ambiguities in the insurance application regarding the 150-yard minimum requirement.   Because Old White reviewed and knew that the application contained the 150-yard minimum, as this Court has previously determined, Bankers asserts that there is no genuine issue

regarding any ambiguity, making summary judgment in its favor appropriate. Old White counters that Bankers' actions did create a reasonable expectation of coverage. Old White further contends that, even if Bankers did not create a reasonable expectation of coverage, it still breached its agreement to act on behalf of Old White, and Old White's breach of contract claim should be permitted to proceed.

The Court finds that there is no genuine issue of material fact regarding the breach of contract claim. In general, the doctrine of reasonable expectations requires "that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 365 S.E.2d 488 (W.Va. 1987). Whether a reasonable expectation of coverage exists depends on the facts alleged in the pleadings, and under West Virginia law, traditionally required a showing of ambiguity in the language of the contract. While the rule was somewhat extended by the West Virginia Supreme Court to cover situations where an insurance agent's actions created misconceptions regarding coverage, such an extension was later called into question when the court held that "[b]efore the doctrine of reasonable expectations is applicable to an insurance contract, there must be an ambiguity regarding the terms of the contract." Syl. Pt. 2, *Robertson v. Fowler*, 475 S.E.2d 116, 120 (W.Va. 1996); *Hill v. John Alden Life Insurance Co.*, 556 F.Supp.2d 571, 574-75 (S.D.W.Va. 2008) (Chambers, J.).

Here, as the Court previously found in *Talbot*, the provisions of the insurance policy contract were clear and unambiguous. Old White's own employee, Mr. Henthorn, testified that he knew the policy application, executed by him on behalf of Old White, contained a minimum

yardage requirement of 150 yards.   As the Fourth Circuit held in its unpublished opinion affirming the Court's ruling in *Talbot*, "Old White cannot prevail even if the terms of the application are interpreted to supersede those of the final policies, as Old White also did not satisfy the application's *unambiguous* 150-yard minimum term."   (Document 257 in Civil Action No. 5:15-cv-12542, at 5) (emphasis added.)   Because there was no ambiguity, and because Old White knew of the minimum yardage requirement in the application, there is no genuine issue as to whether Bankers created a reasonable expectation of coverage.   Bankers' motion for summary judgment as to Count II should be granted.

### 3.   Misrepresentation

Lastly, Bankers moves for summary judgment on Old White's claim of misrepresentation in Count III.   Bankers argues that Old White has presented no facts sufficient to show Bankers concealed or misrepresented any information regarding the insurance policy during the application process.   Bankers argues that Old White knew about the 150-yard minimum requirement in the policy application when it was executed and therefore cannot show that Bankers engaged in misrepresentation.   Old White counters that Bankers "advised Old White that the [150-yard] warranty would be superseded by the addendum Bankers had prepared," and that "Bankers failed to bring pertinent policy negotiation to Old White's attention."   (Pl.'s Resp. in Opp. at 12.)

The West Virginia Supreme Court of Appeals has stated that "[f]raud has been defined as including all acts, omissions, and concealments which involve a breach of legal duty, trust or confidence justly reposed, and which are injurious to another, or by which undue and unconscientious advantage is taken of another."   *Stanley v. Sewell Coal Co.*, 285 S.E.2d 679, 682 (W.Va. 1981).

> In West Virginia, a prima facie case for fraudulent misrepresentation requires proof of the following elements: 1) that the act claimed to be fraudulent was the act of the defendant or induced by him; 2) that it was material and false; that the plaintiff relied upon it and was justified under the circumstances in relying upon it; and 3) that he was damaged because he relied upon it.

*Ochala v. Dyncorp Int'l LLC*, No. CIV. A. 3:08-1027, 2009 WL 4152966, at *5 (S.D.W. Va. Nov. 23, 2009) (Chambers, J.) (quoting Syl. Pt. 1, *Lengyel v. Lint*, 280 S.E.2d 66 (W.Va. 1981)).   Here, Old White has presented no evidence, sufficient to create a dispute of material fact, that Bankers gave any false or misleading information to Old White.   In fact, as the Court has previously made clear, Old White's employee's testimony shows that it undisputedly knew that the insurance application contained a 150-yard minimum yardage requirement.   Further, Old White's argument that Bankers misrepresented that the addendum would supersede the policy application language is without merit given the Fourth Circuit's holding that "the application's addendum does not contradict the 150-yard minimum term, as the addendum does not mention minimum yardage." (Document 257 in Civil Action No. 5:15-cv-12542, at 5.)   Thus, even when viewing the facts in the light most favorable to the non-moving party, Old White has failed to show there is a genuine issue of material fact regarding a misrepresentation made by Bankers.   Bankers' motion for summary judgment as to Count III should be granted.

Given the Court's findings above that summary judgment should be granted regarding all of Old White's claims, the Court need not address Old White's partial motion for summary judgment on liability and finds that said motion should be denied.

## B.  Old White's Motion to Supplement

With these findings in mind, the Court now turns to the Plaintiff's motion to file a supplemental memorandum in support of its motion for summary judgment.   Old White argues

16

that such a supplement is necessary because, during a discovery dispute before Magistrate Judge Aboulhosn, it was brought to light that Bankers' witnesses changed their position and testimony in this litigation from those put forth in *Talbot*.   According to Old White, during the *Talbot* litigation, Bankers' position was that "neither Bankers nor Old White agreed to the alleged minimum distance requirements . . . ."   (Pl.'s Mem. in Supp. at 4) (Document 121.)   However, in the current action, in response to interrogatories and in deposition testimony, Bankers now claims that testimony was false.   Given the change in testimony, Old White asserts that Bankers may have lied under oath during the *Talbot* litigation, and seeks leave to supplement its previously filed motion for summary judgment with this new information.

Bankers counters that the motion should be denied.   According to Bankers, this alleged new evidence Old White purports to bring forth is not new.   Bankers contends that its employees were simply expressing opinions in *Talbot* in Old White's favor that the Court ultimately rejected. In other words, Bankers claims that because it was on Old White's side in *Talbot* and sought to ensure Old White gained coverage under the policy, it expressed the opinion that there was no minimum yardage requirement that applied.   Bankers asserts, however, that this change in testimony "do[es] not change the adjudicated and undisputed facts."   (Bankers' Response to Emergency Motion to Supplement, at 4) (Document 155.)   Thus, Bankers argues that there is no new evidence to be brought forth, and the Plaintiff's motion to supplement its briefs should be denied.

In a recent opinion addressing this issue, Judge Copenhaver established three different instances when it may be appropriate to supplement an earlier-filed motion for summary judgment: "when new material is not merely cumulative or corroborative . . . and . . . creates a new question

17

of material fact that may impact the ruling," when "doing so provides the court with newly discovered evidence that, with reasonable diligence, cold not have been discovered earlier," or when "the request is not made in bad faith and will not result in prejudice to the other parties." *Matheny v. L.E. Myers Co.*, No. 2:16-CV-09304, 2018 WL 1095583, at *1 (S.D.W. Va. Feb. 26, 2018) (internal citations omitted).

Here, the Court finds that none of these three standards are satisfied. First, evidence that Bankers changed its testimony and position in the litigation does not create a new question of material fact that impacts this ruling. In fact, it is not Bankers' position that impacts the ruling at all, but Old White's, as it has been established and affirmed that Old White knew about the 150-yard minimum requirement in the policy application. While Old White's supplemental memorandum may well provide the Court with newly discovered evidence, and while it will not prejudice Bankers, this evidence does not change the fact that Old White's employees knew of the minimum yardage requirement when the final policy application was signed.

The Court abhors and does not take lightly the scenario presented here. As Magistrate Judge Aboulhosn made clear in the discovery hearing, facts do not change simply because a party's position in litigation changes. (*See*, May 10, 2018 Transcr., at 23:8-14.) It is very concerning to the Court that Bankers would make a statement under oath in one proceeding only to turn around and make a totally different and opposite statement under oath in another. Such conduct is inappropriate and deserving of sanctions, and the Court does not condone it. However, that unbecoming conduct does not change the fact that Old White knew the policy application it was filling out and signing contained a minimum yardage requirement, the undisputed fact on which the ruling in *Talbot* and this ruling is based. Therefore, the Court finds that Old White's motion

18

to supplement its summary judgment motion should be denied.

### C. All Risks' Motion to Dismiss

Finally, the Court turns to Third-Party Defendant All Risks' pending motion to dismiss. In its *Third-Party Complaint*, Bankers alleges that it is entitled to contribution and indemnification from All Risks should Old White's claims against Bankers be allowed to proceed.   (Third-Party Compl., at ¶¶ 14-15) (Document 14.)   Because Bankers' claims are contingent on the success of Old White's claims, and because the Court has found that Bankers is entitled to summary judgment on all of Old White's claims, the Court finds that All Risks' motion to dismiss should be granted and the third-party complaint dismissed.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that *Defendant Bankers Insurance, LLC's Motion for Summary Judgment* (Document 21) be **GRANTED**, and that *Plaintiff Old White Charities' Motion for Partial Summary Judgment on Liability* (Document 43) and *Plaintiff's Emergency Motion for Leave to File Supplemental Memorandum Supporting its Position on Pending Motions for Summary Judgment* (Document 120) be **DENIED**.

The Court further **ORDERS** that *Third Party-Defendant All Risks, LTD.'s Motion to Dismiss Third-Party Complaint of Bankers Insurance, LLC* (Document 19) be **GRANTED**, that *Defendant Bankers Insurance, LLC's Third-Party Complaint Against All Risks, Ltd.* (Document 14) be **DISMISSED**, and that all remaining pending motions be **TERMINATED AS MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:       June 27, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

20